# United States Court of Appeals

## For the First Circuit

No. 00-1611

JUAN FRANCISCO ROJAS-REYNOSO,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF DEPORTATION

Before

Torruella, Chief Judge,
Lynch, Circuit Judge,
and Garcia-Gregory, District Judge.[*]

José Guillermo Gonzalez for petitioner.

Ann Carroll Varnon, with whom David W. Ogden, Assistant Attorney General, Civil Division, and Margaret J. Perry, Senior Litigation Counsel, were on brief for respondent.

December 21, 2000

---

[*] Of the District Puerto Rico, sitting by designation.

**LYNCH**, **Circuit Judge**.  Juan Francisco Rojas-Reynoso, a citizen of the Dominican Republic, petitions for review of the April 20, 2000 decision of the Board of Immigration Appeals dismissing his appeal from the denial of his motion to reopen his deportation proceedings.  We affirm that dismissal.

**I.**

In 1991, Rojas-Reynoso illegally entered the United States.  On December 4, 1993, he married a United States citizen.  On May 20, 1994, his wife applied for a visa petition on his behalf so that he could seek adjustment of immigration status within the United States from non-immigrant to permanent resident alien.  On September 17, 1994, she was notified that the application had been approved.

On May 23, 1995, the INS issued Rojas-Reynoso an Order to Show Cause, charging him with entry without inspection in violation of section 241(a)(1)(B) of the Immigration and Nationality Act.  At his August 15, 1995 deportation hearing, Rojas-Reynoso admitted the allegations in the OSC and conceded deportability.  He requested extended voluntary departure until February 15, 1996, in place of deportation.  That request was granted, and an alternate order of deportation to the Dominican Republic was entered.  The immigration judge, Rafael B. Ortiz-Segura, orally instructed Rojas-Reynoso that any request he made before that time to have the voluntary departure date extended was within the sole discretion of the local INS district

director.  Furthermore, the immigration judge warned Rojas-Reynoso that if he failed to timely depart, he would be statutorily ineligible for five years from the scheduled date of departure for various forms of relief, including adjustment of immigration status.[1]  To avoid the application of this five-year bar, an alien must demonstrate "exceptional circumstances," defined as "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien."  INA § 242B(f)(2), 8 U.S.C. § 1252b(f)(2) (repealed 1996); Shaar v. INS, 141 F.3d 953, 956-58 (9th Cir. 1998) (discussing the narrow definition of "exceptional circumstances" adopted by Congress).  Nonetheless, Rojas-Reynoso took no steps to seek adjustment of status, despite his knowledge since September 17, 1994, that he could do so.

Rojas-Reynoso failed to depart by the scheduled date. On March 18, 1996, over a month after his voluntary departure date had passed, Rojas-Reynoso filed a written motion to reopen his deportation proceedings to apply for an adjustment of status

---

[1]    Subject to [receiving written and oral notice of the consequences of remaining in the United States after the scheduled day of departure], any alien allowed to depart voluntarily under section 1254(e)(1) of this title . . . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief [including, inter alia, adjustment of status] for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

INA § 242B(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996).

3

based on the approved visa petition filed by his United States citizen spouse.  Although the governing regulations provided that "a request by an alien for . . . an extension of time within which to depart voluntarily shall be _filed_ with the district director having jurisdiction over the alien's place of residence,"  8 C.F.R. § 240.57 (emphasis added), Rojas-Reynoso instead claimed he had appeared in person before the INS to request an extension of the voluntary departure date.  On April 3, 1996, the immigration judge issued an order granting reopening and scheduling a hearing.

The INS then filed an interlocutory appeal with the BIA challenging the reopening on the ground that Rojas-Reynoso was statutorily ineligible for adjustment of status because he had failed to comply with scheduled voluntary departure date.  On January 16, 1997, the BIA declined to consider the interlocutory appeal until the proceedings were completed and remanded to the immigration judge.

On April 10, 1997, the INS filed a motion for reconsideration of the reopening.  A continued hearing was held on March 31, 1998, before a different immigration judge, Nancy R. McCormack.  At the hearing, Rojas-Reynoso's counsel represented that she and Rojas-Reynoso had appeared before the INS on February 8, 1996, to request an extension of the February 15, 1996 voluntary departure date.  Rojas-Reynoso's counsel also claimed that on February 26, 1996, approximately eleven days after the voluntary departure date had passed, she met with a

4

deportation officer to discuss Rojas-Reynoso's case and his requests for extension of the voluntary departure date. Counsel further contended that since no answer to the oral requests for an extension had been given, she wrote a letter to the INS on February 29, 1996, approximately fourteen days after the voluntary departure date had passed, asserting that a timely request for voluntary departure had been made and that she considered that request to be pending.

When asked what "exceptional circumstances" prevented Rojas-Reynoso from departing within the voluntary departure date, counsel replied that her client had not departed because he believed he could remain in the country until the district director responded in writing to the oral requests for an extension. Counsel also noted that in late February or March 1996 she attended a meeting of the American Immigration Lawyers' Association. Counsel alleged that at that meeting, the INS district director indicated that an alien who had timely requested an extension of voluntary departure could remain in the United States without any adverse consequences until the request was decided. Counsel conceded that Rojas-Reynoso neither received an extension of the voluntary departure date nor departed before that date had expired.

The immigration judge terminated the reopened proceedings, finding they were barred by statute, and reinstated the August 15, 1995 alternate order of deportation. Specifically, the immigration judge found that Rojas-Reynoso had

5

been advised orally and in writing of the consequences of his failure to depart by the voluntary departure date. The immigration judge also noted that Rojas-Reynoso did not file his motion to reopen until over one month after the period for voluntary departure had expired and that he had never been granted an extension of the voluntary departure date. She further concluded that the alleged statements of the district director at the 1996 AILA meeting were made after Rojas-Reynoso's voluntary departure date had passed and that Rojas-Reynoso's alleged excuse for his failure to depart timely did not constitute the "exceptional circumstances" required under the INA to excuse the failure to depart by a voluntary departure date.

Rojas-Reynoso appealed the decision to the BIA. The BIA affirmed the immigration judge's denial of the motion to reopen and for adjustment of status. The BIA reasoned that (1) there were no "exceptional circumstances" as it had previously defined the term in In re Shaar, Interim Decision No. 3290, 1996 WL 426889 (BIA July 11, 1996), aff'd 141 F.3d 953 (9th Cir. 1998), and (2) Rojas-Reynoso's argument was basically one of equitable estoppel. Assuming arguendo that the equitable estoppel doctrine applied to the government in immigration cases, the BIA utilized the three-part test of Heckler v. Community Health Servs., 467 U.S. 51 (1984),[2] and focused on whether Rojas-

_____

[2] Under Heckler, an individual seeking to estop the U.S. Government must show, at a minimum, that the Government or its agents engaged in affirmative misconduct, that the individual reasonably relied on the Government's act or representation, and that the individual was prejudiced by that reliance. See 467

6

Reynoso's reliance was reasonable.  The BIA found that Rojas-Reynoso had not established reasonable reliance because: (1) he knew his petition would likely be denied as he acknowledged in his March 19, 1996 motion to reopen his deportation proceedings and as confirmed by the minutes of a later AILA meeting on August 27, 1997, stating that extensions "were not being granted in most cases"; (2) Rojas-Reynoso produced no evidence he was ready to depart as ordered, but for the district director's statements; (3) the written request for an extension was not filed until after the voluntary departure date; (4) other than the minutes from the August 21, 1997 AILA meeting, held approximately seventeen months after the passage of Rojas-Reynoso's voluntary departure date, Rojas-Reynoso produced no evidence that the district director had made the alleged statements prior to Rojas-Reynoso's voluntary departure date; and (5) Rojas-Reynoso himself claimed that the district director first made the alleged statements "on or about late February or the beginning of March of 1996," and therefore after the expiration of the voluntary departure period.  Accordingly, the BIA dismissed Rojas-Reynoso's appeal.

## II.

We review the BIA's dismissal of a denial of a motion to reopen for abuse of discretion.  INS v. Doherty, 502 U.S. 314, 323 (1992).  We review the BIA's legal conclusions de novo, with

U.S. at 59-61.

7

appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles.  <u>Gailius</u> v. <u>INS</u>, 147 F.3d 34, 43 (1st Cir. 1998).

At the heart of this case are two questions: whether Rojas-Reynoso fell within the "exceptional circumstances" set forth under the INA; or whether, nonetheless, the INS is equitably estopped from denying his motion.

## A. "Exceptional Circumstances"

In his appeal to this court, Rojas-Reynoso does not argue, as he did before the BIA, that he met the "exceptional circumstances" test.  Although the argument is therefore waived, we note again that the term "exceptional circumstances" refers to "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." <u>Shaar</u>, 141 F.3d at 957 (citing 8 U.S.C. § 1252b(f)(2)).[3]  Rojas-Reynoso presents no such "exceptional circumstances," and we conclude, as did the BIA, that he fails that test.

## B.  Equitable Estoppel

---

[3]     Thus, the mere request for an extension of a voluntary departure date, <u>even</u> if made in writing as required, does not itself constitute "exceptional circumstances" and thereby extend such date.  <u>See</u> <u>Mardones</u> v. <u>McElroy</u>, 197 F.3d 619, 624 (2d Cir. 1999).  Similarly, the mere filing of a motion to reopen deportation proceedings does not itself constitute "exceptional circumstances." <u>Shaar</u>, 141 F.3d at 957; <u>Stewart</u> v. <u>INS</u>, 181 F.3d 587, 596 (4th Cir. 1999).

Rojas-Reynoso now says that this case is not properly analyzed under the "exceptional circumstances" test because his voluntary departure date was extended as a result of the policy of the INS district director to extend voluntary departure dates upon oral request until there was a written decision declining such request. Further, he says the district director had sole jurisdiction to extend the voluntary departure deadline, and that any such decision is not reviewable. See 8 C.F.R. § 240.57.[4]

We assume arguendo the equitable estoppel doctrine applies with respect to an alien's reasonable reliance on the "affirmative misconduct" of the Government in its enforcement of the immigration laws. See Akbarin v. INS, 669 F.2d 839, 842-44 (1st Cir. 1982) (discussing the application of estoppel principles to the Government).[5] As the agency applied the correct test and the attack is on the decision reached, we review for abuse of discretion, and find there was none. Also, Rojas-Reynoso did not make the argument before the BIA in the terms that he now makes: that the voluntary departure deadline was extended by the supposed oral policy of the district director to extend departure deadlines upon oral request until the request

---

[4] That same provision provides that any request for extension of the time for voluntary departure shall be filed with the district director.

[5] In Akbarin, we stated that "the soundest method for analyzing a claim of estoppel against the Government in an immigration case is to make two principal inquiries: whether the Government's action was error, and, if the complaining party reacted to the error, whether the action was intended to or could reasonably have been intended to induce reliance." 669 F.2d at 843.

was acted on.  Assuming dubitante the argument is preserved by Rojas-Reynoso's vague equitable argument before the agency, it still fails.  The immigration judge found that the departure date was not extended and that the supposed statement by the district director, if made at all,[5] was not made before the date of Rojas-Reynoso's required departure.[6]  Petitioner's vague claims that there was a "policy" in effect at the local INS office before his February 15, 1996 voluntary departure date is unsupported by any statement from the district director and does not controvert those specific findings.  Those findings doom his petition, and the petition is denied.[7]

---

[5]      If the district director did later make a statement that a voluntary departure deadline could be extended by a mere oral request until the office acted on the request, and if aliens relied to their detriment on such a statement, that would be a matter of considerable concern.  This case does not, however, present that issue.

[6]      Moreover, the minutes of the August 17, 1997 AILA meeting held long after Rojas-Reynoso's voluntary departure date state that extensions "were not being granted in most cases."

[7]      Rojas-Reynoso also argues that the BIA erred in not accepting the findings of fact of Judge Ortiz-Segura, the immigration judge who initially reopened the proceedings on the ground that the motion to reopen was "timely and reasonable." However, Judge Ortiz-Segura did not make any specific findings as to the only material facts in issue -- the existence, nature, and time-frame of the district director's purported policy of extending voluntary departure dates upon oral request.  Indeed, Rojas-Reynoso concedes that what prompted Judge Ortiz-Segura to grant his motion to reopen "is only conjecture."  Thereafter, the second immigration judge, Nancy R. McCormack, properly found that Rojas-Reynoso was ineligible for relief.

10