**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

———————

No. 07-2648

RADJAMIN HASUDUNGAN BENITO,

Petitioner,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL,

Respondent.

———————

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

———————

Before

Boudin, Stahl, and Howard,
Circuit Judges.

———————

Armin A. Skalmowski on brief for petitioner.
Gregory G. Katsas, Acting Assistant Attorney General, and
Terri J. Scadron, Assistant Director, Office of Immigration
Litigation, on brief for respondent.

———————

October 22, 2008

———————

**STAHL, <u>Circuit Judge</u>.**  The Board of Immigration Appeals (BIA) affirmed an Immigration Judge's (IJ's) decision finding Radjamin Hasudungan Benito ineligible for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Benito now petitions this court for a review of the BIA's denial of his claims.  We deny the petition for review.

## I. BACKGROUND

In May 2002, Benito, a native and citizen of Indonesia, entered the United States as a non-immigrant visitor with authorization to remain in the country until June 18, 2002.  In a Notice to Appear dated April 11, 2003, the Department of Homeland Security (DHS) began removal proceedings.  Conceding removability, Benito appeared before an IJ on November 29, 2005, and sought asylum, withholding of removal, and relief under the CAT.

The IJ found Benito credible, and thus, we relate the facts of the case as he testified to them.

Benito was born in January 1972 to a Protestant Christian family.  During his childhood and adult life in Indonesia, a largely Muslim nation, he was an active member of Christian churches.  Benito and his family experienced anti-Christian verbal threats and abuse by neighbors and acquaintances, and he observed discrimination against Christians during high school and at the University of Sumatera Utara.

After graduating in 1996 with a degree in economic management, Benito worked for five years at a Korean-owned manufacturing company. On several occasions, coworkers sent him emails with graphic images and news stories detailing murders of Christian citizens. Benito did not report the emails to his Korean supervisors or the Indonesian police, believing such efforts would be futile. During this time, many Christian churches were burned and destroyed. Benito also recalls hearing of additional bombings and murders of Christians. In August 2001, Benito began working for a foreign currency exchange, and while there, experienced no anti-Christian encounters.

Benito entered the United States on a tourist visa for 30 days in May 2002 to attend his brother's graduation from the Rochester Institute of Technology in New York. Before Benito departed Indonesia, his brother, who was concerned for Benito's safety as a Christian in Indonesia, suggested that Benito remain in the United States. While Benito's brother returned to Indonesia within weeks of his graduation, Benito remained in the United States and spent the next three years working odd jobs and following events in Indonesia. During this time, Benito's parents, brother, and three sisters continued to live in Indonesia as Christians. While Benito believed they faced "intimidation," no family member experienced physical harm. On October 26, 2005, believing that conditions in Indonesia had worsened, Benito filed

an application for asylum, withholding of removal, and protection under the CAT.

After a hearing on November 29, 2005, the IJ determined that Benito was removable as charged. Specifically, the IJ found that Benito did not establish extraordinary or changed circumstances to justify his failure to apply for asylum within one year of his arrival to the United States, failed to show clear probability of future persecution to warrant withholding of removal, and provided no evidence that he likely faced torture upon his return to Indonesia, thus failing to satisfy the CAT's requirements. On appeal, the BIA affirmed the IJ's decision and rejected as evidence of changed circumstances warranting a remand two news articles Benito attached to his appellate brief.

## II. ANALYSIS

### A. Standard of Review

This court reviews the BIA's decision for substantial evidence and accepts the BIA's findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Njenga v. Ashcroft, 386 F.3d 335, 338 (1st Cir. 2004) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We will reverse factual determinations contained in the decision below only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Where, as here, "the BIA

adopts an IJ's decision, we review the relevant portion of the IJ's opinion as though it were the decision of the BIA." Guillaume v. Gonzáles, 504 F.3d 68, 72 (1st Cir. 2007) (citing Stroni v. Gonzáles, 454 F.3d 82, 86-87 (1st Cir. 2006)).

## B. Asylum

An application for asylum must be filed within one year of the alien's arrival in the United States, absent changed circumstances affecting eligibility for asylum or extraordinary circumstances relating to the delay in filing. 8 U.S.C. §§ 1158(a)(2)(B), 1158(a)(2)(D). Here, it is undisputed that Benito resided in the United States more than three years before filing for asylum. The IJ determined no extraordinary or changed circumstances existed to justify waiving the time limit. Therefore, we lack jurisdiction to review this determination. Id. at § 1158(a)(3); Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005) (explaining we lack jurisdiction to review the BIA's findings regarding compliance with the one-year time limit as well as whether there are extraordinary or changed circumstances sufficient to merit an exception).

## C. Withholding of Removal

Benito next appeals the BIA's denial of withholding of removal. First, he asserts that the IJ committed reversible error in failing to make a specific finding regarding past persecution. The Government counters that Benito never presented this argument

to the BIA, and therefore, this court lacks jurisdiction to review it.

"When a claim presented to us on appeal has not previously been presented to the BIA, the petitioner has failed to exhaust his administrative remedies, eliminating this court's jurisdiction to review the agency's actions." Berrio-Barrera v. Gonzáles, 460 F.3d 163, 167 (1st Cir. 2006) (citing Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) and 8 U.S.C. § 1252(d)(1)). In his BIA appeal, Benito argued the IJ erred in ruling there was no past persecution and no fear of future persecution. However, Benito did not take issue with the specificity of the IJ's holding on past persecution. The BIA thus lacked notice that Benito believed the IJ's failure to make an explicit finding constituted reversible error. Because Benito did not exhaust his administrative remedies by raising this argument below, we lack the jurisdiction to consider it now.

Although we lack the jurisdiction to consider a remand for more specific reasoning, we can consider whether the BIA incorrectly denied Benito withholding of removal, an argument Benito raised below. The "standard for withholding deportation is more stringent than that for asylum." Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003). While an applicant for asylum must show that a reasonable person in his circumstances would fear persecution, withholding of removal requires proof of a clear

probability of persecution. Palma-Mazariegos v. Gonzáles, 428 F.3d 30, 37 (1st Cir. 2005). "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). See also Topalli v. Gonzáles, 417 F.3d 128, 132 (1st Cir. 2005) (differentiating "systematic maltreatment that rose to the level of past persecution" from "isolated incidents"); Bocova v. Gonzáles, 412 F.3d 257, 263 (1st Cir. 2005) ("mistreatment ordinarily must entail more than sporadic abuse in order to constitute persecution"). We agree with the BIA that Benito has not met this high standard.

A withholding applicant who establishes past persecution enjoys a rebuttable presumption that "[his] life or freedom would be threatened in the future . . . on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). Absent past persecution, the applicant must prove he faces a clear probability of persecution on account of a protected ground. Id. at § 1208.16(b)(2).

While the IJ explicitly stated that Benito had not demonstrated a clear probability of future persecution, the IJ did not make specific findings regarding Benito's evidence of past persecution. We have previously noted this failure can "unnecessarily complicate[] our review." Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001). However, we also have observed that "findings regarding past persecution are easily inferable."

Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008); accord Wiratama v. Mukasey, 538 F.3d 1, 7 (1st Cir. 2008)(determining that IJ's findings on future persecution subsumed issue of past persecution where applicant offered no independent evidence of probability of future persecution).

Here, the IJ considered whether Benito had shown that it was more likely than not he would face persecution if he returned to Indonesia. The IJ reasoned that Benito's evidence of verbal threats and the graphic emails did not establish a probability of future persecution, noted that Benito had not suffered physical harm in Indonesia, and observed that Benito's family continued to reside in Indonesia without physical injury. See Bonilla v. Mukasey, 539 F.3d 72, 75-78 (1st Cir. 2008) (affirming denial of withholding of removal where applicant received repeated and targeted phone and mail threats and was declared a military target but his son continued to live in Colombia); Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) (stating "the fact that close relatives continue to live peacefully in [petitioner's] homeland undercuts the alien's claim that persecution awaits his return").

Although the IJ did not respond expressly to Benito's claim of past persecution, both the IJ and the BIA acknowledged the alleged acts of persecution, and we can infer from the denial of withholding "that those rather bland incidents failed to justify the relief requested." Pulisir, 524 F.3d at 308. Indeed, like the

petitioner in <u>Wiratama</u>, Benito provided no independent evidence regarding a probability of future persecution. <u>See</u> 538 F.3d at 7. The IJ's attention to the absence of physical harm to Benito and his family thus reflected his conclusion that Benito had not suffered past persecution. <u>Cf.</u> <u>Sinurat</u> v. <u>Mukasey</u>, 537 F.3d 59, 61-62 (1st Cir. 2008) (holding that harm suffered by Indonesian alien from single beating by Muslim students did not amount to past persecution); <u>Pulisir</u>, 524 F.3d at 308-09 (finding two instances of rock-throwing by Muslims at petitioner's Christian church and one altercation at prayer meeting during which petitioner lost a tooth did not constitute past persecution). We agree with the BIA that Benito has not demonstrated past persecution or a clear probability of future persecution such that the IJ would be compelled to conclude to the contrary.

**D. Protection under the CAT**

Benito appeals the BIA's determination that he is not eligible for protection under the CAT. Benito did not make arguments in either his petition or his brief to the BIA regarding relief under the CAT. Therefore, we lack the jurisdiction to consider this argument. 8 U.S.C. § 1252(d)(1).

**E. New Country Conditions Evidence**

Finally, Benito claims we must reverse the BIA's ruling because the administrative tribunal refused to remand in light of new country conditions evidence. This court reviews the BIA's

-9-

decision on a motion to remand for abuse of discretion. <u>Zhang</u> v. <u>Ashcroft</u>, 348 F.3d 289, 293 (1st Cir. 2003) (<u>citing</u> <u>Nascimento</u> v. <u>INS</u>, 274 F.3d 26, 28 (1st Cir. 2001)). Abuse of discretion exists only where the denial was made "without a 'rational explanation, inexplicably departed from the established policies, or rested on an impermissible basis.'" <u>Id.</u> (<u>quoting</u> <u>Nascimento</u>, 274 F.3d at 28).

Benito has not provided compelling evidence to demonstrate the BIA abused its discretion in denying his remand. The BIA considered Benito's evidence and concluded that it failed to demonstrate a substantial likelihood of a different result upon remand. We agree with the BIA that the two news articles submitted by Benito do not demonstrate a sufficient change in country conditions to warrant a remand of his case and conclude the BIA did not abuse its discretion in finding that Benito failed to present evidence that likely would change the outcome of his case.

## III. CONCLUSION

For the foregoing reasons, we *deny* Benito's petition for review.